UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE CLARK,<br><br>    Plaintiff,<br><br>    v.<br><br>HIDDEN VALLEY LAKE ASSOCIATION,<br><br>    Defendant. | Case No. 16-cv-02009-SI<br><br>**ORDER DENYING DEFENDANT'S SPECIAL MOTION TO STRIKE AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 54, 66, 72 |

On October 27, 2017, the Court held a hearing on defendant Hidden Valley Lake Association's special motion to strike (Anti-SLAPP motion) and motion for summary judgment. For the reasons set forth below, the Court **DENIES** defendant's motion to strike and **GRANTS IN PART** and **DENIES IN PART** defendant's motion for summary judgment.

**BACKGROUND**

Plaintiff Wayne Clark is a golf professional who was hired on a three-year contract in 2011 as the Director of Golf for defendant Hidden Valley Lake Association ("HVLA"). Defendant is a homeowners association with approximately 3300 members. At the time of plaintiff's hiring, William Chapman served as General Manager of the homeowners association. In May 2014, Cindy Spears became General Manager. Prior to Chapman's departure, he renewed plaintiff's employment contract for a three-year term, to run from 2014 to 2017.

HVLA's golf course was the subject of some debate within the community. According to an article that plaintiff wrote during his time as Director of Golf, HVLA residents fell into two camps: those who viewed the golf course as an amenity to be subsidized by the homeowners

association, and those who thought that the golf course should be a self-sustaining business that generated its own revenue. *See* Dkt. No. 55, Barnes Decl. Ex. 27.

On April 15, 2015, Spears terminated plaintiff's contract pursuant to the "without cause" provision.[1] This lawsuit arises out of alleged defamatory statements made by defendant, through Spears, after plaintiff's termination. Plaintiff alleges that Spears "engaged in a course of conduct and action to impugn [plaintiff's] personal and professional reputation" by conveying false information about plaintiff "to individuals that had no reason to know of it . . . ." Dkt. No. 46, SAC ¶ 8.

The operative complaint provides the following examples of defamatory statements that Spears allegedly made:

- That plaintiff misused or embezzled HVLA funds. This includes statements that plaintiff "had inappropriately taken monies from the HVLA golf shop[;]" "that he failed to charge all people for playing golf even though it was required[;] . . . that he mismanaged the golf operation budget and increased HVLA subsidization from HVLA funds; . . . that he made fraudulent use of his [company] credit card, and[] that HVLA paid for [his] participation in golf tournaments inappropriately." *Id.* ¶¶ 8, 10.

- That plaintiff drank alcohol and watched pornography while working and that he had pornography on his work computer. *Id.* ¶¶ 8, 10.

- That plaintiff "was going to be arrested for criminal conduct and that he had engaged in fraud, dereliction of duties and theft . . . ." *Id.* ¶ 8.

- That plaintiff "did not pay for food or drinks at the HVLA bar[.]" *Id.* ¶ 10.

- That plaintiff's "employment contract was illegal and invalid[.]" *Id.*

- That plaintiff had been terminated "for cause." *Id.* ¶ 8.

According to plaintiff, Spears made these statements "to non[-]HVLA employees with the intent that the non[-]HVLA employees would gossip about CLARK and publish the false

---

[1] The parties dispute whether the contract was valid. They agree the contract was not ratified by the HVLA Board but disagree as to whether this invalidated the contract. This dispute is not germane, as both sides agree that defendant honored the contract's "without cause" severance terms.

2

information on social media, including Facebook[,]" and on various blogs about HVLA that several residents maintained. *Id.* Spears allegedly also made these statements to HVLA employees "that had no reason to know of such information." *Id.*

After plaintiff's termination, HVLA staff cleaned out his desk at work. According to defendant, the desk contained, among other items, a roll of toilet paper, a bottle of alcohol, and "pictures of young girls wearing nearly[] see[-]through shirts, one of which contained writing that implied the photographed girl was under aged." Def.'s Mot. Summ. J. at 12, 23. According to plaintiff, these items were planted in his desk and he had never seen these particular pictures before the filing of defendant's motion. Clark Decl. ¶¶ 29, 33

Plaintiff filed this lawsuit on April 15, 2016. Dkt. No. 1. On June 20, 2017, pursuant to the parties' stipulation, plaintiff filed his Second Amended Complaint. Dkt. No. 46. The SAC states nine claims for relief: (1) violation of the California constitutional right to privacy, (2) defamation, (3) negligent supervision, (4) negligent infliction of emotional distress, (5) intentional infliction of emotional distress, (6) libel, (7) false light invasion of privacy, (8) interference with prospective economic advantage and business relations, and (9) violation of California Labor Code sections 201 and 203.

Now before the Court are defendant's special motion to strike claims one through eight under California Code of Civil Procedure section 425.16 (the "anti-SLAPP" statute) and motion for summary judgment on claims one through nine. Dkt. Nos. 54, 66, 72.[2] The parties have also included with their motions various objections to the opposing side's evidence. *See, e.g.,* Dkt. No. 80.

**LEGAL STANDARD**

**I.      Anti-SLAPP (Cal. Code Civ. Proc. § 425.16)**

---

[2] All references to the anti-SLAPP motion refer to the corrected motion at Docket No. 66. All references to the opposition to the anti-SLAPP motion refer to the corrected brief at Docket No. 75.

The California anti-SLAPP statute permits defendants to bring a "special motion to strike" if a cause of action against them arises "from any act . . . in furtherance of the . . . right of petition or free speech . . . in connection with a public issue," unless "the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Code Civ. Proc. § 425.16(b)(1). "In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." *Id*. § 425.16(b)(2).

In evaluating an anti-SLAPP motion, courts engage in a two-part inquiry. "First, a defendant 'must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech.' . . . Second, once the defendant has made a prima facie showing, 'the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims.'" *Vess v. Ciba-Geigy Corp*., 317 F.3d 1097, 1110 (9th Cir. 2003) (citations omitted). The plaintiff's burden is "comparable to that used on a motion for judgment as a matter of law." *Price v. Stossel*, 620 F.3d 992, 1000 (9th Cir. 2010) (citing *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001)). "The plaintiff must demonstrate that the complaint is legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. A defendant's anti-SLAPP motion should be granted when a plaintiff presents an insufficient legal basis for the claims or when no evidence of sufficient substantiality exists to support a judgment for the plaintiff." *Id.* (citations and internal quotation marks omitted). Evidence must be admissible and is not weighed by the court, but presumed true if in favor of the plaintiff. *See, e.g.*, *Metabolife*, 264 F.3d at 840; *Tichinin v. City of Morgan Hill*, 177 Cal. App. 4th 1049, 1062 (2009).

The California Legislature expressly intended that section 425.16 "be construed broadly" in protection of the public interest. Cal. Code Civ. Proc. § 425.16(a). Although it is a state statute, a party may bring an anti-SLAPP motion to strike state law claims in federal court. *Vess*,

4

317 F.3d at 1109 (citing *United States ex. rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970-73 (9th Cir. 1999)).[3]

## II. Summary Judgment

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to produce evidence showing the absence of a genuine issue of material fact. *Id.* at 325. Rather, the burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *Id.*

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." *Id.* However,

---

[3] The *Newsham* case articulates the current Ninth Circuit law and will be applied here. However, some judges, including Judge Kozinski and Judge Paez of the Ninth Circuit, have questioned its correctness. *See, e.g.*, *Makaeff v. Trump Univ.*, 715 F.3d 254 (9th Cir. 2013) (two separate concurring opinions, each suggesting that the anti-SLAPP statutes are procedural, not substantive, and therefore should not be applied in federal courts).

5

conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)(4).

# DISCUSSION

## I. Defendant's Special Motion to Strike

### A. Timeliness

Subsection (f) of the anti-SLAPP statute requires that the motion "be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper." Cal. Code Civ. Proc. § 425.16(f). Plaintiff urges the Court to dismiss the special motion to strike as untimely. Pl.'s Anti-SLAPP Opp'n at 2. He argues that the anti-SLAPP statute's purpose of quickly identifying and disposing of certain lawsuits cannot be fulfilled here, given the extensive discovery and expense undertaken in the ten months following the filing of the First Amended Complaint.[4]

The Ninth Circuit has held that the filing deadline in California's anti-SLAPP law does not apply in federal court because it is a procedural rule that "directly collide[s] with the more permissive timeline Rule 56 provides for the filing of a motion for summary judgment." *Sarver v. Chartier*, 813 F.3d 891, 900 (9th Cir. 2016) (citing Fed. R. Civ. P. 56(b)). In light of *Sarver*, the Court will not dismiss defendant's anti-SLAPP motion on timeliness grounds. The discovery cutoff in this case is December 1, 2017, and the Court set a deadline of September 15, 2017, for the filing of dispositive motions. Dkt. No. 40. Defendant's anti-SLAPP motion is timely.

### B. Act in Furtherance of the Defendant's Rights of Free Speech

Defendant seeks to strike plaintiff's claims one through eight in the Second Amended

---
[4] The First Amended Complaint (filed October 21, 2016) and the Second Amended Complaint (filed June 20, 2017) are substantively identical, except that the latter drops several claims for relief, as explained in the parties' stipulation. *See* Dkt. No. 43.

6

Complaint. The first step in analyzing an anti-SLAPP motion is determining whether the defendant successfully made "an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech." *Vess*, 317 F.3d at 1110. California's anti-SLAPP statute defines such an act to include:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Code Civ. Proc. § 425.16(e). "The latter two categories require a specific showing the action concerns a matter of public interest; the first two categories do not require this showing." *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 474 (2000) (citing *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1117-18 (1999)).

In *Damon*, the former general manager of a homeowners association sued for defamation. The California Court of Appeal found that Board meetings of a homeowners association, as well as a newsletter published by a private homeowners club within the association, were public forums within category three of the anti-SLAPP statute. 85 Cal. App. 4th at 475-76. Despite the fact that the views expressed in the newsletter were not particularly "balanced," the newsletter "was a public forum in the sense that it was a vehicle for communicating a message about public matters to a large and interested community." *Id.* at 476.

Here, to the extent that plaintiff's claims are based on statements made at HVLA Board or Committee meetings, those are a public forum. *See id.* at 475. The same is true of statements published on the various online forums at issue in this case, including the HVLA Facebook page and blogs maintained by various residents. *See id.* at 476; *see also Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957 (N.D. Cal. 2013) (citing, inter alia, *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 693 (2012) ("Without doubt, Internet message boards are places 'open to the public or a public forum' for purposes of section 425.16.")).

The remaining statements at issue are ones that Spears made privately, either to other staff

or to residents. These are largely accusations of mismanagement of golf department funds or use of alcohol and pornography at work. *See* Pl.'s Anti-SLAPP Opp'n at 7-8. The Court finds that the statements properly fall within the anti-SLAPP statute under category four: "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." *See id.* § 425.16(e)(4). Doubtless, statements made to Julie Vonada (the Director of Human Resources), Richard Pritchard (the assistant golf director who succeeded plaintiff as Director of Golf), and Jim Freeman (HVLA's Marketing and Communications Manager) about plaintiff's suspected embezzlement and misconduct during work hours fall within this umbrella. By the same token, statements made to residents of HVLA regarding the conduct of their Director of Golf, who in that role assisted in the high school's junior golf program, also fall within category four. *See Donovan v. Dan Murphy Found.*, 204 Cal. App. 4th 1500, 1510 n.4 (2012) ("Conduct involving homeowners associations generally involves a matter of public interest because a homeowners association is akin to a governmental entity.") (citations omitted); *see also Terry v. Davis Comm. Church*, 131 Cal. App. 4th 1534, 1547 (2005) ("The issue as to whether or not an adult who interacts with minors in a church youth program has engaged in an inappropriate relationship with any of the minors is clearly a matter of public interest."); Clark Dep. at 59:6-61:18.

For these reasons, the alleged defamatory statements meet the first step of the anti-SLAPP inquiry. The Court thus proceeds to whether plaintiff has demonstrated a probability of prevailing on the merits. Because the heart of plaintiff's lawsuit is his claim for defamation, the Court begins its analysis there.

### C. Defamation

For plaintiff's defamation claim to survive dismissal at this stage, plaintiff must demonstrate a probability that he will prevail on each element. Under California law, to state a prima facie case of defamation, a plaintiff must show (1) "the intentional publication" of (2) "a statement of fact" that (3) is "false," (4) "unprivileged," and (5) "has a natural tendency to injure or which causes special damage." *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999).

8

Additionally, if plaintiff is found to be a limited purpose public figure, plaintiff "must establish a probability that he or she can produce clear and convincing evidence that allegedly defamatory statements were made with knowledge of their falsity or with reckless disregard of their truth or falsity." *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 700 (2007) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)). Further, the First Amendment requires that a defamation claim be based on a statement "of and concerning" the plaintiff. *Blatty v. New York Times,* 42 Cal. 3d 1033, 1042 (1986).

Defendant argues that plaintiff's defamation claim must be stricken because: plaintiff is a limited purpose public figure and cannot establish actual malice, plaintiff cannot establish that defendant made any unprivileged publication, and plaintiff cannot establish that any of the statements were false. Def.'s Anti-SLAPP Mot. at 19.

### 1. Falsity

The Court finds that fact issues as to the truth or falsity of the alleged statements preclude striking the defamation claim under the anti-SLAPP statute. *See Bently Reserve L.P. v. Papaliolios*, 218 Cal. App. 4th 418, 435 (2013).

For instance, the statements regarding pornography and alcohol use mainly turn on what was allegedly found in plaintiff's desk following his termination. HR Director Julie Vonada testified that after plaintiff's termination she cleared out his desk and did an inventory of the contents. Vonada Dep. at 47:17-24. She stated that she found a roll of toilet paper, a bottle of alcohol, a stack of papers, and some personal mail. *Id.* at 47:25-48:3. In the stack of papers were "pictures of women in, like, I don't know how to explain it. Like wet T-shirts. Very risqué or limited clothing. That sort of – they all were – had some sort of clothing, whether it be limited or not." *Id.* at 48:24-49:9.

Richard Pritchard, who as assistant golf director shared a work computer with plaintiff, testified that he never saw any pornography on the work computer.[5] Pritchard Dep. at 33:20-23,

---

[5] Defendant designated Pritchard as its Rule 30(b)(6) witness on the topic regarding "The facts supporting Defendant's claim that Plaintiff had suggestive images on his computer."

9

34:7-20. He further testified that he assisted Vonada in cleaning out plaintiff's desk and that he did not see anything inappropriate in its contents. *Id.* at 50:10-24. Pritchard said that there was no alcohol in plaintiff's desk but that there was a bottle of alcohol on a shelf in the office and that it belonged to Pritchard. *Id.* at 50:25-51:9.

Plaintiff states that he has never seen the photographs that are attached to defendant's motion and that purport to be the photos taken from his desk.[6] Clark Decl. ¶¶ 29, 33. Plaintiff does not deny that he may have had a suggestive photograph in his desk but denies that it was pornography. He states that a member printed out the photo for him, and that plaintiff stuck the photo in his desk because plaintiff didn't want it around. Clark Dep. at 121:1-25. In his deposition, plaintiff testified that he never drank alcohol while on duty. *Id.* at 78:15-17. In light of this evidence, defendant is incorrect that plaintiff cannot prevail on the element of falsity as to his defamation claim.

### 2. Actual Malice

Additionally, even if the Court were to find that plaintiff is a limited purpose public figure, there are fact issues regarding malice that preclude striking the defamation claim at this stage. A limited purpose public figure must show malice by clear and convincing evidence: "that allegedly defamatory statements were made with knowledge of their falsity or with reckless disregard of their truth or falsity." *Overstock.com*, 151 Cal. App. 4th at 700.

Plaintiff argues that Spears made the defamatory statements with knowledge that they were false. For instance, plaintiff believes that the photo of the contents of his desk drawer, which defendant attached to its motion, "appear[s] to have been staged." Clark Decl. ¶ 33. He supports this assertion by stating: although he kept a roll of toilet paper in the top drawer of his desk, it was not the same drawer that is depicted in the photo; he has never seen the photographs of

---

Thuesen Decl. Ex. 9, 10.

[6] Plaintiff further states that defendant has not produced the inventory list that Vonada made when clearing out his desk. Defendant, by contrast, states that plaintiff has not produced the actual contents of the desk that were returned to him. Def.'s Anti-SLAPP Mot. at 27.

10

girls/women that appear in the desk drawer; and the bottle of alcohol was not in his desk drawer but was on a shelf and belonged to Pritchard. *Id.* Pritchard and Vonada, the two individuals who cleared out plaintiff's desk drawer following his termination, disagree about whether there was a bottle of alcohol in the desk. Vonada says there was. Vonada Dep. at 47:25-48:3. Pritchard agrees with plaintiff and says that the alcohol belonged to Pritchard and that it was located on a shelf in the office, not in the desk. Pritchard Dep. at 50:25-51:14.

As another example, there is evidence in the record to support plaintiff's claim that Spears was intentionally spreading information about plaintiff among HVLA residents. At her deposition, Vonada stated that Spears told her that Spears "would give information to members of the Association about Wayne Clark for the purpose of having them post it either on Facebook or other social media[.]" Vonada Dep. at 106:24-107:5.[7] According to Vonada, Spears said "[t]hat she [Spears] was a little birdie and she would give information to a member. Her name, Michelle Wade . . . [a]nd that Michelle would post it as her own information. . . . That's how Cindy [Spears] called what you refer to as planting, she would call it a little birdie told – that was telling people." *Id.* at 107:6-15. One of Wade's online postings, which plaintiff cites in his opposition, reads:

> Little Birdies Chirping. Some were having loads of fun in their offices, in the desk open bottle of booze and toilet paper and Naughty pictures on the computer - thousands and thousands, although I don't understand what the toilet paper was for. Maybe that was part of some special Gravy Train or Golf Ritual?????.

Dkt. No. 73, Theusen Decl. Ex. 12.[8] Wade denies that Spears was the one who gave her this information. Wade Dep. at 63:9-13. Significantly, plaintiff has been unable to depose Spears because he could not locate her, despite the fact that defendant filed a declaration from Spears in support of its motion for summary judgment.[9]

A jury could reasonably infer that Spears had fabricated the photo of the contents of

---

[7] At the hearing, defendant objected to this testimony as hearsay and double hearsay. This objection is preliminarily **OVERRULED**, without prejudice to raising it again at the time of trial.

[8] Defendant objects to this exhibit on hearsay and relevance grounds. The objection is preliminarily **OVERRULED**, without prejudice to raising it again at the time of trial.

[9] The Court has issued a separate order regarding Spears's deposition. Dkt. No. 83.

11

1 plaintiff's desk and/or intentionally spread rumors to residents and therefore that the statements she made against plaintiff were made with knowledge of their falsity. Thuesen Decl. ¶ 2. The Court will not strike plaintiff's defamation claim for lack of malice.[10]

For the foregoing reasons, the Court **DENIES** defendant's motion to strike the defamation claim (Claim Two).

### D. Other Claims (Claims One, Three through Eight)

Defendant argues that if the defamation claim fails then Claim One and Claims Three through Eight must also fail, as they are derivative of the defamation claim. Def.'s Anti-SLAPP Mot. at 21-22. Because the Court has found that plaintiff's defamation claim will survive the special motion to strike, the Court will not strike plaintiff's other tort claims under the anti-SLAPP statute.

## II. Defendant's Motion for Summary Judgment

Courts apply a "summary-judgment-like" test in determining whether a plaintiff has demonstrated a probability of prevailing at the second step of an anti-SLAPP inquiry; accordingly, the Court will not repeat its analysis of the defamation claim here but reiterates that fact issues preclude dismissing Claim Two at this stage. *See Taus*, 40 Cal. 4th at 714. In addition to the argument that the remaining claims are derivative of the defamation claim, and so must fail, defendant separately argues that summary judgment is proper for the following reasons.[11]

---

[10] Defendant also argues that the statements at issue are protected by the litigation privilege under California Civil Code section 47(b) and/or the common interest privilege under section 47(c). Def.'s Anti-SLAPP Mot. at 21. The Court has before it no evidence that Spears's alleged defamatory statements were made "in the course of a judicial proceeding to achieve the objects of the litigation[.]" *See Jacob B. v. Cnty. of Shasta*, 40 Cal. 4th 948, 955 (2007). As to the common interest privilege, that privilege applies to communications made "without malice" and the Court has found that fact issues as to malice remain at this stage. *See* Cal. Civ. Code § 47(c).

[11] Plaintiff does not oppose partial summary judgment on Claim Eight, for interference with prospective economic advantage and business relations. Pl.'s Summ. J. Opp'n at 21. The Court accordingly **GRANTS** the motion for summary judgment on Claim Eight.

### A. California Constitutional Right to Privacy (Claim One)

Defendant states that plaintiff's first claim must fail, "assum[ing] Plaintiff brings the claim in reference to the alleged disclosure of Spears'[s] concerns regarding board approval of Plaintiff's 2014 contract." Def.'s Mot. Summ. J. at 29. However, plaintiff clarifies in his opposition that the basis for this claim is, in part, his allegation that Spears made statements that plaintiff "had pornography, including child pornography, on his computer [and] drank alcohol while on the job[.]" Pl.'s Summ. J. Opp'n at 16. The Court has found there are genuine issues of material fact regarding these statements and so **DENIES** the motion for summary judgment as to Claim One.

### B. Negligent Supervision (Claim Three)

The Court agrees with defendant that plaintiff has not presented evidence sufficient to sustain a claim of negligent supervision. Under California law, an employer may be held directly liable for the behavior of an unfit employee where the employer was negligent in the hiring, training, supervising, or retaining of that employee. *Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 815 (2006). Negligence liability will be imposed upon the employer if it knew or should have known that hiring the employee created a particular risk or hazard and that particular harm then materializes. *Id.* As such, California follows the rule set forth in the Restatement (Second) of Agency Section 213, which provides in pertinent part: "A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless . . . in the employment of improper persons or instrumentalities in work involving risk of harm to others." Liability may be imposed "either on the basis of . . . action -- for example, the negligent hiring of an agent -- or . . . inaction -- for example, the failure to provide adequate supervision of the agent's work." *Far West Fin. Corp. v. D & S Co.*, 46 Cal. 3d 796, 812 (1988).

Plaintiff has presented no evidence that HVLA knew or should have known of any risk that Spears posed. In his opposition brief, plaintiff points only to general assertions that "Spears was not fit for the position she occupied." Pl.'s Summ. J. Opp'n at 20. Citation to declarations that describe Spears as "unstable" will not suffice to create a genuine issue of material fact. It is not defendant's burden to produce evidence showing the absence of a genuine issue of material

fact. *Celotex*, 477 U.S. at 325. The Court **GRANTS** defendant's motion for summary judgment as to Claim Three for negligent supervision.

### C. Emotional Distress (Claims Four and Five)

Defendant asks the Court to find the claims for negligent and intentional infliction of emotional distress are precluded by the exclusivity provisions of workers' compensation. Def.'s Mot. Summ. J. at 31. However, plaintiff does not seek damages for conduct that occurred during the course of his employment.[12] *See* Pl.'s Summ. J. Opp'n at 14. Thus, his claim falls outside the scope of workers' compensation. *See* Cal. Labor Code § 3600(a) (stating that, inter alia, workers' compensation liability may apply where "at the time of the injury" both the employer and the employee are subject to the workers' compensation provisions and where "at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment.").

Defendant further argues that plaintiff cannot prove intentional infliction of emotional distress because there is no allegation of outrageous conduct. Def.'s Mot. Summ. J. at 30. The Court disagrees, finding there is a genuine issue of material fact as to whether Spears's conduct was outrageous, for purposes of plaintiff's IIED claim. To prevail on an IIED claim, a plaintiff must prove: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Avina v. United States*, 681 F.3d 1127, 1131 (9th Cir. 2012) (applying California law). The first prong requires the conduct to "be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Berkeley v. Dowds*, 152 Cal. App. 4th 518, 533 (2007) (citation and internal quotation marks omitted). "Whether a defendant's conduct can reasonably be found to be outrageous is a question of law that must

---

[12] In response to defendant's arguments regarding the one-year statute of limitations on defamation claims, plaintiff clarified that he is seeking damages only for statements that occurred after his April 15, 2015 termination. *See* Def.'s Mot. Summ. J. at 19; Pl.'s Summ. J. Opp'n at 14.

14

1 initially be determined by the court; if reasonable persons may differ, it is for the jury to determine
2 whether the conduct was, in fact, outrageous." *Id.* at 534.

3 As explained above, plaintiff asserts that his supervisor fabricated allegations that he was
4 viewing child pornography and then intentionally spread those rumors throughout the small
5 community where he lived and worked. Reasonable persons could differ as to whether this
6 conduct is outrageous, and such a question should be decided by the jury.

7 Accordingly, the Court **DENIES** defendant's motion for summary judgment on Claims
8 Four and Five.

### D. Libel (Claim Six)

Defendant seeks summary judgment on plaintiff's libel claim but makes no separate argument in its motion as to why this claim should fail. At the hearing, defendant asserted plaintiff has pointed to no written, defamatory statements authored by HVLA or by Spears, and so there can be no libel claim. The tort of defamation, whether written or oral, "involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus*, 40 Cal. 4th at 720. "One who takes a responsible part in a publication of defamatory material may be held liable for the publication." *Overstock.com*, 151 Cal. App. 4th at 712 (citing *Shively v. Bozanich*, 31 Cal. 4th 1230, 1245 (2003)). The Court has found there are factual issues regarding whether, as plaintiff alleges, Spears intentionally spread false statements about plaintiff to HVLA residents with the intent that they post these statements online. *See, e.g.*, Vonada Dep. at 106:24-107:5; Wade Dep. at 63:9-13. These allegations are disputed and are complicated by the fact that plaintiff has been unable to depose Spears. Thus, the Court **DENIES** the motion for summary judgment on Claim Six, on the same grounds that it denied the motion to strike Claim Two.

### E. False Light Invasion of Privacy (Claim Seven)

Defendant argues that this claim should be dismissed as superfluous because it is redundant with the libel claim. Def.'s Mot. Summ. J. at 15. "Under California law, the tort of

invasion of privacy 'provides a remedy for situations in which there is neither injury to a property right nor breach of contract, and where a civil action for defamation would fail because of the defense of *truth*.'" *Cort v. St. Paul Fire & Marine Ins. Cos., Inc.*, 311 F.3d 979, 987 (9th Cir. 2002) (citing 5 Witkin, Summary of California Law § 577 (1988)). The claims are therefore not redundant and the Court **DENIES** defendant's motion to dismiss Claim Seven.

### F. Labor Code Sections 201 and 203 (Claim Nine)

Plaintiff's ninth claim for relief is for violation of California Labor Code sections 201 and 203. Plaintiff alleges that defendant failed to pay him his commission wages on the date of his termination and thus he is owed waiting time penalties under section 203. Defendant states that plaintiff "was paid all commissions due and owing to him at the time as demonstrated by the payroll records." Def.'s Mot. Summ. J. at 32. However, defendant does not cite to any payroll records nor to any other evidence showing when and how much plaintiff was paid. "The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact[,]" and defendant has not done so here. *See Celotex*, 477 U.S. at 323. The Court **DENIES** the motion for summary judgment on Claim Nine.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby **DENIES** the motion to strike. The Court **DENIES** the motion for summary judgment on Claims One, Two, Four, Five, Six, Seven, and Nine. The Court **GRANTS** the motion for summary judgment on Claims Three and Eight.

**IT IS SO ORDERED**.

Dated: October 31, 2017

_____
SUSAN ILLSTON
United States District Judge

16